STATE BANK OF ELDORADO *v.* MAXSON.

1. ACTIONS—NONRESIDENTS—JURISDICTION—ATTACHMENT.

Under 3 Comp. Laws 1897, § 10555, providing that a creditor may proceed by attachment against his nonresident debtor in the circuit court of any county where the property of the debtor may be found, a circuit court has jurisdiction of an action by one nonresident against another, personally served, attaching the real property of the latter situated in the county, though the action is based on a contract originating and performable in another State.

2. CONFLICT OF LAWS — LIABILITY OF MARRIED WOMEN — ENFORCEMENT.

Under the laws of Kansas, the separate estate of a married woman is liable for the payment of her promissory note, though the only consideration for the note was a credit extended to her husband; and such liability may be enforced in an appropriate action at law.

3. SAME—WIFE'S SEPARATE ESTATE.

2 Gen. Stat. Kan. 1897, chap. 123, § 17, which declares that any woman who shall have married out of the State shall, if

her husband afterward becomes a resident of the State, enjoy all the rights as to property which she may have acquired by the laws of any other State, does not preclude a Kansas creditor from enforcing, by attachment of property in this State, the liability of a Kansas debtor, a married woman, upon a note which, though good under the laws of Kansas, would be ineffective, if given in this State, to bind her separate property.[1]

Error to Hillsdale; Chester, J. Submitted February 2, 1900. Decided March 6, 1900.

*Assumpsit* by the State Bank of Eldorado, Kansas, against L. I. Maxson, impleaded with A. C. Maxson and others, upon a promissory note. From a judgment for plaintiff, defendant brings error. Affirmed.

*Grant Fellows* and *Bert D. Chandler*, for appellant.

*Frankhauser & Cornell* (*F. A. Lyon*, of counsel), for appellee.

LONG, J. The parties to this cause all reside in the State of Kansas. The action was commenced in this State by writ of attachment. The property attached consisted of the undivided half interest of defendant Isabella Maxson in a certain 80 acres of land in Hillsdale county. The writ was served personally on her. The other defendants were not served with process. The action is upon a certain promissory note reading as follows:

"$2,000.    ELDORADO, KANSAS, Oct. 7, 1897.

"Thirty days after date, for value received, we promise to pay to the order of the State Bank of Eldorado, Kansas, two thousand dollars, with interest from maturity until paid at ten per cent. per annum; interest payable annually, and, if not paid annually, each installment thereof, when due, shall be added to and become a part of the principal, and thenceforth draw the same rate of interest. Each of the several makers and indorsers hereon hereby expressly

---

[1] As to the enforcibility of contracts of married women outside of the State in which they are legally made, see note to *Ruhe* v. *Buck*, (Mo.) 25 L. R. A. 178.

agrees that the holder of this note may, at the instance of any maker hereof, and without notice to any other maker or indorser, make a valid agreement to extend the time of payment of this note, or any part thereof, for any period or periods not exceeding one year from maturity, said makers and indorsers hereby consenting to and approving of the same, and expressly waiving any defense by reason thereof. The indorsers hereon expressly waive protest and notice of protest of this note.

" A. C. MAXSON, JR.
"MAUDE MAXSON.
"A. C. MAXSON.
"L. I. MAXSON."

It was shown on the trial that the defendant Isabella Maxson ( L. I. Maxson ) signed the note with her husband, A. C. Maxson; that it was not given for her debt, but solely for a debt of the husband; that none of the money received was used in and about her separate estate, and was in no wise for her benefit. The lands sought to be reached by these proceedings came to her by descent under the laws of this State. She was a married woman at the time she signed the note in controversy.

The married woman's act of the State of Kansas and several Kansas decisions were put in evidence by the defendant. The court below held, and so directed the jury, that the defendant Isabella Maxson was liable on the note, unless they found that the note had been paid. He further instructed them that:

"This note is a Kansas contract, and is governed by the laws of the State of Kansas. Under the laws of the State of Kansas, this defendant is bound by her signature to her husband's note in the same way that she would be if she were unmarried. If you find that she signed this note, she signed it as a joint maker, and is, therefore, equally bound with her husband, and her property is liable for its payment in the same way as that of her husband. You are, therefore, instructed that you cannot consider the question of the marriage relations between these parties; and I charge you that she is bound to pay this note, unless you find the same has been paid."

It is of this part of the charge that counsel for the defendant complain.   They contend:

1. That the court had no jurisdiction of the controversy.
2. That a common-law action could not be maintained.
3. That, under a proper construction of the married woman's act of Kansas, the defendant's property could not be held for a debt for which her husband was primarily liable.

Our statute provides that:

"Any creditor shall be entitled to proceed by attachment against his debtor, * * * in case the debtor * * * is a nonresident, * * * in the circuit court of any county where the property of the debtor subject to attachment may be found."   3 Comp. Laws 1897, § 10555.

In *Newland* v. *Wayne Circuit Judge*, 85 Mich. 151 (48 N. W. 544), the precise question was before this court, and it was held that, where a nonresident comes into this State, and submits himself to the jurisdiction of the court, the statute points out the mode of procedure to acquire jurisdiction over the defendant.   See, also, *Cofrode* v. *Wayne Circuit Judge*, 79 Mich. 343 (44 N. W. 623, 7 L. R. A. 511).   We think the court below was not in error in holding that it had jurisdiction of the parties and subject-matter of the controversy.

The second point made by counsel is that the suit should have been in equity, and not at law.   Counsel rely upon the case of *Deering* v. *Boyle*, 8 Kan. 525 (12 Am. Rep. 480).   Counsel say of that case:

"It will be seen that the court in deciding it bases its decision absolutely and solely upon the equity powers of the court, and as squarely holds that a common-law action will not lie, and grants to the plaintiff equity relief.   It does so because it holds that, when a married woman signs a note, in equity she thereby charges her separate estate, and she is estopped from claiming otherwise, and, exercising its equity powers, the court holds her to be liable upon her signature.   * * *   Kansas holds that when she signs her name to a note she thereby (in equity) pledges all her property, and the equity power of the court will enforce the pledge."

We think counsel are in·error in supposing that the Kansas case above mentioned holds that a common-law action will not lie upon this kind of a contract. The contract was made in Kansas, and must be controlled by the law of that State. It was held in the case referred to that a married woman can bind herself for the payment of her husband's debt by ·signing a promissory note, the only consideration for which was the credit given the husband. Construing section 2 of the married woman's act of that State, the court says:

"A married woman may, under said section 2 of the married woman's act, contract in the same manner, to the same extent, and with like effect, with reference to her property, as a married man."

In *Miner* v. *Pearson*, 16 Kan. 28, it was said:

"A married woman may, in this State, bind herself by her contracts to the extent of her separate property; and a personal judgment may be rendered against her, which will reach any or all of her separate property not exempt from execution under the exemption laws."

In *Wicks* v. *Mitchell*, 9 Kan. 80, in a suit on a promissory note given by a married woman in satisfaction of her husband's debt, it was held that an allegation that "she has not charged her separate property with the payment thereof, but at the time of its execution refused in any manner so to charge her separate property," presented no defense; that the law presumes that, by executing such note, a married woman intends to bind all her property, and she will not be permitted to deny such effect, nor to avoid the instrument by declaring at the·time of its execution that she will not do what she is actually doing.

Counsel, however, contend that, under section 17 of the married woman's act of Kansas, it must be held that the defendant is protected under the laws of this State. That section provides:

"Any woman who shall have been married out of this State shall, if her husband afterward becomes a resident of this State, enjoy all the rights as to property which she

may have acquired by the laws of any other State, Territory, or country, or which she may have acquired by virtue of any marriage contract or settlement made out of this State." 2 Gen. Stat. 1897, chap. 123, § 17.

Counsel's contention is that, under this statute, "if a woman acquires property under the laws of this State, when it is assailed in the courts of this State she is entitled to the protection of the laws of this State, and that under the laws of this State it could not be taken for the husband's debt." It is true that, under a contract made in this State, the wife's property cannot be taken for the husband's debt unless the wife expressly agrees in writing that it may be so taken; that is, unless the contract binds her separate property specifically. The Kansas statute above quoted gives the wife the right to the enjoyment of all her property, but, as held in *Deering* v. *Boyle, supra,* her property is subject to seizure and sale upon contract made by her, the same as the husband's property is liable.

We think the court below was not in error in the charge given, nor in the construction he gave to the Kansas cases. The judgment must be affirmed.

The other Justices concurred.